IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VALERIE ANN POHL,

      Plaintiff,

vs.                                                            1:20-cv-00111-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Valerie Ann Pohl's Motion to
Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 15), which was fully
briefed on October 28, 2020.  *See* Docs. 19, 24, 25.  The parties consented to my entering final
judgment in this case.  Docs. 4, 7, 8.  Having meticulously reviewed the entire record and being
fully advised in the premises, I find that the ALJ failed to properly weigh the opinion of Ms.
Pohl's examining psychologist Dr. Eligio R. Padilla.  I therefore GRANT Ms. Pohl's motion and
remand this case to the Commissioner for further proceedings consistent with this opinion.

I.      **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final
decision[1] is supported by substantial evidence and whether the correct legal standards were
applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports
the Commissioner's findings and the correct legal standards were applied, the Commissioner's
decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.      Background and Procedural History

Ms. Pohl was born in 1971, was in special education throughout school, graduated from high school, and worked for a trucking company, as a data entry clerk, and as a school secretary. AR 32, 46, 220, 251.[3] Ms. Pohl filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 21, 2015, alleging disability since May 29, 2015 due to migraines, vertigo, fibromyalgia, depression, and anxiety. AR 220–30, 250. The Social Security Administration ("SSA") denied her claims initially on October 20, 2015. AR 137–41.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 12-1 through 12-10 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

The SSA denied her claims on reconsideration on October 25, 2016.  AR 146–52.  Ms. Pohl

requested a hearing before an ALJ.  AR 153–54.  On June 20, 2018, ALJ Lillian Richter held a

hearing.  AR 39–80.  ALJ Richter issued her unfavorable decision on January 25, 2019.  AR 17–

38.

     The ALJ found that Ms. Pohl met the insured requirements of the Social Security Act

through December 31, 2020.  AR 23.  At step one, the ALJ found that Ms. Pohl had not engaged

in substantial, gainful activity since May 29, 2015, her alleged onset date.  *Id*.  At step two, the

ALJ found that Ms. Pohl suffered from the following severe impairments:  "shingles,

postherpetic neuralgia, dizziness, nausea, obstructive sleep apnea, generalized anxiety disorder,

major depressive disorder, post-traumatic stress disorder, panic disorder, social anxiety,

adjustment disorder, dysthymic disorder, degenerative disc disease of the cervical spine with

spondylosis, headaches, intractable migraines, type II diabetes mellitus, morbid obesity, and

syncope."  *Id*.

     At step three, the ALJ found that none of Ms. Pohl's impairments, alone or in

combination, met or medically equaled a Listing.  AR 24–25.  Because the ALJ found that none

of the impairments met a Listing, the ALJ assessed Ms. Pohl's RFC.  AR 25–31.  The ALJ found

Ms. Pohl had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> the claimant can frequently climb ramps and stairs, frequently stoop, kneel,
> crouch, and crawl, never balance or climb ladders, ropes, and scaffolds, should
> avoid exposure to unprotected heights and hazardous machinery, and is limited to
> simple, routine work, occasional interaction with supervisors, co-workers, and
> members of the public, and a workplace with few changes in the routine work
> setting.

AR 25–26.

     At step four, the ALJ concluded that Ms. Pohl could not perform any of her past relevant

work.  AR 31–32.  The ALJ found Ms. Pohl not disabled at step five because she could perform

jobs that exist in significant numbers in the national economy—such as addresser, merchandise

marker, and warehouse checker.  AR 32–33.  On February 20, 2019, Ms. Pohl requested that the

Appeals Council review the ALJ's unfavorable decision.  AR 217–19.  Ms. Pohl submitted

additional evidence to the Appeals Council.  AR 10–16.  On December 9, 2019, the Appeals

Council denied the request for review.  AR 1–7.  Ms. Pohl timely filed her appeal to this Court

on February 7, 2020.[4]  Doc. 1.

### IV.     Ms. Pohl's Claims

Ms. Pohl raises three arguments for reversing and remanding this case:  (1) the ALJ erred

by improperly rejecting the opinion of examining psychologist Eligio R. Padilla, Ph.D.; (2) the

ALJ erred by failing to account for her subjective allegations of pain and other symptoms in

formulating her RFC; and (3) the ALJ erred by failing to adequately develop the record with

regard to her fibromyalgia diagnosis.  Doc. 15 at 2.  Because I remand based on the ALJ's failure

to properly weigh the opinion of Dr. Padilla, I do not address the other alleged errors, which

"may be affected the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d

1297, 1299 (10th Cir. 2003).

### V.     Analysis

Ms. Pohl saw Eligio R. Padilla, Ph.D., a licensed clinical psychologist, for a consultative

psychological evaluation on May 29, 2018.  AR 934–42.  Dr. Padilla evaluated her "cognitive,

affective and behavioral status" using multiple evaluation tools:  an interview; a mental status

examination; administration of the Weschsler Adult Intelligence Scale ("WAIS-IV"), the Beck

Depression Inventory ("BDI") and the Posttraumatic Checklist ("PCL-C"); and a review of

---

[4] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the
decision is mailed.  20 C.F.R. § 404.981; *see also* AR 3.

mental health treatment records and a function report.  *Id*.

Dr. Padilla conducted a Mini-Mental Status Exam ("MMSE")[5] as part of his broader and more comprehensive Mental Status Examination ("MSE").  AR 937–38.  The MSE evaluated the following:  Appearance and Self-Care, Sensorium, Executive Functions, Relating, Affect and Mood, and Thought and Language.  *Id*.  Dr. Padilla included discussion of the MMSE in the section of the MSE entitled "Sensorium."  AR 937–38.  Dr. Padilla noted that Ms. Pohl scored a 25/30 on the MMSE, "consistent with mild cognitive impairment."  *Id*.  He further noted the following in the Sensorium section:

- Attention and concentration: mildly impaired, missed one of five items in "serial sevens"
- Orientation: oriented in terms of person, place and situation; mildly disoriented regarding time—thinking that the date was the 26th and [ ] that the season was already summer
- Recall/Memory: impaired; missed one of three words in "recall;" could not repeat a short sentence word for word; and produced a Working Memory Index of 77, a score in the borderline region at the 6th percentile.

AR 938.  The Working Memory Index score was obtained from the WAIS-IV.  *See* AR 939.

The rest of the findings noted in the Sensorium section were obtained from the MMSE.

In the "Executive [F]unctions" section of the MSE, Dr. Padilla found that Ms. Pohl's fund of knowledge was "significantly below average (5th percentile on the Information subtest)"; that her judgment was "impaired by multiple mental/emotional disorders"; and that her decision-

---

[5] The MMSE is a commonly used set of 30 questions which take about 10 minutes to administer and is used for screening cognitive function.  Willacy, Dr. Hayley, *Mini Mental Status Examination*, available at https://patient.info/doctor/mini-mental-status-examination-mmse#ref-1 (last visited March 11, 2021).  "The MMSE provides measures of orientation, registration (immediate memory), short-term memory (but not long-term memory) as well as language functioning."  *Id*.  The MMSE asks the patient the date, the season, what town patient is in, to remember the names of three objects, to spell WORLD in reverse or to count backwards from 100 by sevens, and to repeat a short phrase.  *See* sample MMSE at https://www.oxfordmedicaleducation.com/geriatrics/mini-mental-state-examination-mmse/ (last visited March 11, 2021).

making was "compromised by her depression, PTSD and anxiety." AR 938. In the "Affect and Mood" section of the MSE, Dr. Padilla found Ms. Pohl's mood to be dysphoric and her affect to be consistent with this mood. *Id*. In the "Thought and Language" section of the MSE, Dr. Padilla noted that Ms. Pohl's speech was at a "slow rate and low volume," and her thought content consisted of "coping with her myriad mental/emotional, physical, familial and financial concerns." *Id*.

Dr. Padilla also analyzed Ms. Pohl's WAIS-IV test results. AR 938–41. Overall, the WAIS-IV showed that Ms. Pohl was "functioning cognitively at the low end of the low average range of intellectually abilities." AR 939. Her "overall thinking and reasoning abilities" exceeded only 9% of individuals her age. AR 939–40. Her verbal reasoning abilities were "in the borderline range and above those of only 7% of her peers." AR 940. Her "ability to sustain attention, concentrate, and exert mental control" was also in the borderline range and above those of only 6% of her peers. AR 941. Dr. Padilla noted that Ms. Pohl "had difficulty with the two tasks that demand mental control, that is, attending and holding information in short-term memory while performing some operation or manipulation with it and then correctly producing the transformed information." *Id*.

Dr. Padilla diagnosed Ms. Pohl with chronic major depressive disorder. AR 937, 941. Ms. Pohl scored a 47/63 on the BDI-II, a score Dr. Padilla noted is consistent with severe major depression. AR 937. Dr. Padilla noted that Ms. Pohl's depression manifests in "feelings of hopelessness[,] helplessness, pessimistic thinking about her future[,] and social withdrawal and isolation." *Id*. He further noted that Ms. Pohl experiences "suicidal ideation on a daily basis" but without a plan or intention of taking her life at the time of examination. *Id*.

Dr. Padilla also diagnosed Ms. Pohl with chronic PTSD.  AR 941.  Dr. Padilla noted that Ms. Pohl's score of 68 on the PCL-C was consistent with a diagnosis of PTSD.  AR 937.  Dr. Padilla further found that Ms. Pohl met all six criteria for the diagnosis of PTSD—including the sixth criteria which requires that "the disturbance caus[e] clinically significant distress or impairment in social, occupational, and other important areas of functioning."  AR 936–37.

Dr. Padilla assessed Ms. Pohl with a Global Assessment of Functioning ("GAF") score of 45. AR 941.  The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (Text Revision 4th ed. 2000) at 32.  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id*. at 34.  A GAF score of 41–50 indicates "[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  *Id*.

Dr. Padilla concluded his narrative report as follows:

> Given her relatively low level of cognitive functioning, the chronic and severity of PTSD, Major Depression and secondary anxiety, her fibromyalgia, back pain, sleep apnea, insufficient sleep and vertigo, her financial stressors, unresolved conflicts with her parents, her social withdrawal and isolation and her limited personal, familial and social resources, Ms. Pohl's prognosis is guarded, at best, and is more likely poor, even with the support of the medical and mental health professionals who treat h[er] and with whom she consults.

AR 942.

Dr. Padilla also completed a Medical Assessment of Ability to Do Work-Related Activities (Mental).  AR 944–45.  Dr. Padilla opined that Ms. Pohl had the following moderate and marked limitations:

<u>Understanding and Memory</u>

- Marked limitation in the ability to understand and remember detailed instructions.

<u>Sustained Concentration and Persistence</u>

- Marked limitation in the ability to carry out detailed instructions;
- Marked limitation in the ability to maintain attention and concentration for extended periods of time (i.e. 2-hour segments);
- Marked limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance;
- Marked limitation in the ability to sustain an ordinary routine without special supervision;
- Marked limitation in the ability to work in coordination with/or proximity to others without being distracted by them; and a
- Marked limitation in the ability to complete a normal workday and workweek without interruptions from psychological-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

<u>Social Interaction</u>

- Marked limitation in the ability to interact appropriately with the general public;
- Marked limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Marked limitation in the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes; and a
- Moderate limitation in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

<u>Adaptation</u>

- Marked limitation in the ability to respond appropriately to changes in the work place; and a
- Marked limitation in the ability to set realistic goals or make plans independently of others.

AR 944–45.  Dr. Padilla noted in the comments on his assessment that "Major Depression, PTSD, symptoms of anxiety, chronic pain and vertigo adversely affect understanding, memory, sustained concentration and persistence."  AR 944.  He also indicated that her "very low verbal

9

comprehension and working memory indices" contributed to limitations in her sustained

concentration and persistence.  *Id.*

The ALJ gave Dr. Padilla's opinions "little weight."  AR 31.  The ALJ gave the

following rationale for the weight she assigned:

> While her working memory scores were in the borderline ra[n]ge, her
> performance consultative examination on serial sevens showed her to be only
> mildly impaired.  She was able to provide a lengthy personal history, and she was
> fully oriented to person, place, and situation, but only mildly disoriented as to
> time.  Thus, Dr. Padilla's assessment of marked concentration and persistence
> limitations is not supported by his examination findings during which the
> claimant missed one of five items while performing serial sevens and which he
> rated as "mildly impaired."  (Exhibit 11F/6)  I additionally note that he found her
> only mildly impaired in the ability to understand and remember basic instructions.
> (Exhibit 11F/9)  His assessed marked social limitations are not consistent with the
> claimant's good cooperation and eye contact during his examination.  Nor are
> they consistent with the claimant's statement that she walks her dog nearly every
> other day and her report that she has no difficulty performing errands.  (Ex.
> 8F/115, 116; 15F/5).  Finally, the significant limitations he assigned are not
> consistent with the claimant's medical records during which the claimant was
> noted on several occasions to be doing well with good mood and affect when
> compliant with medication.  (Exhibit 16F)

AR 31.

Ms. Pohl argues that the ALJ "improperly" rejected Dr. Padilla's opinion and gave

"inadequate" reasons for rejecting it.  Doc. 15 at 13–14.  She argues that by giving Dr. Padilla's

opinion "little weight," the ALJ "effectively reject[ed]" it.  *Id*. at 14 n.23 (citing *Chapo v. Astrue*,

682 F.3d 1285, 1291 (10th Cir. 2012)).  Ms. Pohl does not challenge the facial validity of the

reasons the ALJ gave for rejecting Dr. Padilla's opinion—that his opinion was inconsistent with

his exam findings, inconsistent with her daily activities, and inconsistent with other medical

records.  *Id*. at 14.  However, Ms. Pohl argues that the ALJ committed legal error by

"impermissibly select[ing] portions of the medical records that would lead to an unfavorable

decision while ignoring other evidence in the record."  *Id*. at 17.

First, Ms. Pohl argues that the ALJ, in finding that Dr. Padilla's opinions were inconsistent with his exam findings, erred by "rely[ing] solely on portions of the record that support the decision denying benefits and ignor[ing] evidence" favorable to a finding of disability.  *Id*. at 14 (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).  Ms. Pohl argues that the ALJ failed to adequately discuss the results of the MSE, BDI-II, PCL-C, and borderline working memory score in rejecting Dr. Padilla's opinion.  *Id*. at 14–15.  Second, Ms. Pohl argues that the ALJ's conclusion that Dr. Padilla's opinion is inconsistent with her daily activities is not supported by the record.  *Id*. at 15–16.  She argues that the ALJ's assertion that she "walks her dog nearly every other day" is not supported by the record, and that this statement in the medical records is a "cut and paste" note that is approximately six to eight years out of date.  *Id*. at 15.  She further argues that the ALJ's claim that "she has no difficulty performing errands" is not supported by the record, and that, even if true, the ALJ does not explain how this supports rejecting Dr. Padilla's opinion.  *Id*. at 16.  Third, Ms. Pohl argues that, while the ALJ claims that Dr. Padilla's opinions are inconsistent with the medical evidence, the ALJ fails to "indicate which records are inconsistent with Dr. Padilla's opinion" and engages in impermissible cherry-picking of the record by failing to discuss medical evidence that was consistent with Dr. Padilla's opinion.  *Id*. at 16–17.

In response, the Commissioner does not defend the ALJ's rejection of Dr. Padilla's opinion.  *See* Doc. 19 at 8–11.[6]  Instead, the Commissioner argues that "[t]o the extent that [Ms. Pohl] suggests the ALJ outright rejected Dr. Padilla's opinion by giving it 'little weight' . . ., this is not so."  *Id*. at 9.  The Commissioner argues that, "[a]lthough the ALJ professed to give Dr.

---

[6] The Court cites to the CM/ECF pagination at the top of each page, rather than the document's internal pagination at the bottom of each page.

Padilla's opinion little weight, it is nonetheless reasonably discernible from her decision that she

in effect gave it partial weight."  *Id*.  The Commissioner asserts that

> [w]hat the ALJ seemed to be expressing, albeit imperfectly, was that she was
> permissibly adopting a middle ground between the conflicting opinions as to
> Plaintiff's mental functional abilities, without fully embracing any of them.  *See
> Smith*, 821 F.3d at 1268.  And it was particularly reasonable for the ALJ, in
> assessing Plaintiff's mental RFC, to dial down Dr. Padilla's opinion of marked
> limitations that contrasted with his observations of [several] mild and borderline
> [ ] deficits, and Plaintiff's relatively benign mental health treatment records.

*Id*. at 10.

The Court need not decide whether the ALJ rejected Dr. Padilla's opinion altogether, as

Ms. Pohl argues, or whether she gave it "partial weight," as the Commissioner argues.[7]  In either

case, remand is required.  First, remand is required if the ALJ rejected Dr. Padilla's opinion.  The

Commissioner offers no argument defending a complete rejection of Dr. Padilla's opinion.  Thus,

---

[7] *See Garcia v. Saul,* No. 19cv580 KK, 2020 WL 3051562, at *18 n.23 (D.N.M. June 8, 2020)
(explaining that courts have different interpretations of *Chapo*):
> In *Chapo*, the Tenth Circuit found that the ALJ in that case "effectively
> reject[ed]" a medical source opinion to which he had nominally "accord[ed] little
> weight."  *See* 682 F.3d at 1290–91 (discussing "the ALJ's justification for
> effectively rejecting (or, as the ALJ put it, 'according little weight to') Dr. Vega's
> unopposed findings").  Courts in this circuit have sometimes interpreted this
> language to mean that, universally, "according a medical opinion 'little weight' is
> 'effectively rejecting' that opinion."  *Martinez v. Saul*, No. CIV 18-1196 KBM,
> 2019 WL 4346311, at *3 (D.N.M. Sept. 12, 2019); *Perea v. Berryhill*, No. CV 17-
> 401 KK, 2018 WL 3405257, at *7 & n.24 (D.N.M. July 12, 2018); *see also, e.g.*,
> *Quintero v. Colvin*, 567 F. App'x 616, 620 n.6 (10th Cir. 2014) ("Although the
> ALJ actually stated she assigned the opinion 'little, if any weight' rather than
> outright rejecting it, we have recognized such statements operate as the equivalent
> of a rejection of the opinion."); *Sanchez v. Saul*, No. CV 18-1214 JHR, 2020 WL
> 1236607, at *4 n.6 (D.N.M. Mar. 13, 2020) ("The ALJ afforded 'little weight' to
> Dr. Hughson's opinions, thereby 'effectively rejecting' them under Tenth Circuit
> law."); *but see Dunn v. Colvin*, No. 14-CV-00759-KLM, 2015 WL 1756126, at *5
> (D. Colo. Apr. 15, 2015) (declining to equate "little weight" with "rejection"
> notwithstanding *Chapo* where it was "patently clear that the ALJ did *not* fully
> reject Dr. Quintana's opinion but, rather, merely gave it little weight") (emphasis
> in original).

the Commissioner concedes that a complete rejection of Dr. Padilla's opinion would be error.

Second, the Commissioner's argument that the ALJ adopted parts of Dr. Padilla's opinion, even

if true, also fails.  The Court does not agree with the Commissioner that it is "reasonably

discernible" that the ALJ gave Dr. Padilla's opinion partial weight.  Furthermore, it is not clear

to the Court which parts of Dr. Padilla's opinion the ALJ adopted and which she rejected, and

her basis for doing so.  As such, the Court cannot affirm the decision as legally correct, and

remand is required.

       "The RFC assessment must first identify the individual's functional limitations or

restrictions and assess his or her work-related abilities on a function-by-function basis, including

the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945."  SSR 96-

8p, 1996 WL 374184, at *1 (July 2, 1996).  This means the ALJ must consider how the

claimant's impairments affect her physical abilities, mental abilities, and other abilities.  20

C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d).  An ALJ must consider all of the following when

assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your
> mental limitations and restrictions and then determine your residual functional
> capacity for work activity on a regular and continuing basis.  A limited ability to
> carry out certain mental activities, such as limitations in understanding,
> remembering, and carrying out instructions, and in responding appropriately to
> supervision, co-workers, and work pressures in a work setting, may reduce your
> ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-

related mental activities generally required by competitive, remunerative work include the

abilities to:  understand, carry out, and remember instructions; use judgment in making work-

related decisions; respond appropriately to supervision, co-workers and work situations; and deal

with changes in a routine work setting.").

In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record.  SSR 96-8p, 1996 WL 374184, at*1–2.  The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at*7.  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*  If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  As a baseline, the ALJ must support his or her findings with specific weighing of the evidence, and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009–10.  This does not mean that an ALJ must discuss every piece of evidence in the record.  But it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting.  *Id.* at 1010.

In this case, the ALJ failed to sufficiently tie the RFC findings to the evidence of record. The ALJ summarized some of Ms. Pohl's mental health treatment records. AR 29. The ALJ concluded that Ms. Pohl's "mental impairments support the mental limitations stated in her residual functional capacity, but no further limitations are warranted." AR 30. However, the ALJ failed to tie the mental limitations in her RFC to the evidence in the record. The ALJ did not include an adequate narrative discussion citing medical and nonmedical evidence to support her mental RFC findings. The ALJ offered no function by function assessment of Ms. Pohl's mental RFC, and no explanation of which parts of Dr. Padilla's opinion she credited and which she rejected. Because the ALJ's reasons for the mental RFC are not articulated with sufficient particularity to allow for judicial review, the Court must remand. *Clifton*, 79 F.3d 1009.

The Commissioner argues that the ALJ "reasonably assessed mental limitations that represented a middle ground between the State agency psychologists' opinions of no more than mild limitations, and Dr. Padilla's opinion of marked limitations." Doc. 19 at 7. The Commissioner argues that the Tenth Circuit approved this approach in *Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) and in *Chapo*, 682 F.3d at 1288. Doc. 19 at 7. The Commissioner's reliance on *Smith* and *Chapo* is misplaced, and the ALJ's explanation of how she arrived at Ms. Pohl's RFC is inadequate.

In *Smith*, the Tenth Circuit affirmed an unfavorable disability determination where the record contained conflicting medical opinions regarding the claimant's fingering, handling, and feeling abilities, and the ALJ "arrived at an assessment between the two medical opinions without fully embracing either one." *Smith*, 821 F.3d at 1268. It did so by relying on the approach the Tenth Circuit "upheld" in *Chapo*, 682 F.3d at 1288. In *Chapo*, the claimant argued that her RFC was not supported by substantial evidence because

the conclusion that she can do light work [was] not found in the opinions of either Dr. Amin or Dr. Krause—the former did not find physical limitations that would restrict Ms. Chapo to light work, while the latter did not find physical capacities that would allow her to do light work.  She insists that the ALJ was not authorized to determine her RFC by splitting the difference between the two opinions.

*Chapo*, 682 F.3d at 1288.  The court pointed out that the "ALJ did not triangulate from the two opinions," noting that the ALJ had rejected Dr. Krause's opinion and accorded weight *only* to Dr. Amin's opinion.  *Id*.  The court noted that the RFC the ALJ adopted was more favorable to the claimant than Dr. Amin's opinion and, while the ALJ could have been more explicit to tying this "mitigating gesture to the evidence in the record," the court noted that it was "aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit."  *Id*.  The *Chapo* court issued a narrow holding that "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."  *Id*.

Here, unlike *Chapo*, the ALJ did not give substantial weight to the opinions of the state agency doctors or "temper" those opinions for Ms. Pohl's benefit.  Instead, the ALJ gave the state agency psychologists' opinions "little weight."  AR 30.  Confusingly, the ALJ explained that she gave these opinions "little weight" because they were "inconsistent with [Ms. Pohl's] mental health treatment throughout the period" and with Dr. Padilla's "examination findings."  AR 30–31.  However, the ALJ also gave Dr. Padilla's opinions "little weight."  AR 31.  So, while the ALJ relied on Dr. Padilla's opinion in rejecting the opinion of the state agency psychologists, it is unclear what parts of Dr. Padilla's opinion the ALJ credited in formulating Ms. Pohl's RFC.  Unlike *Smith,* there are not two opinions in this case that clearly discuss the same limitations, and the Court is unable to tell how the ALJ arrived at the mental RFC she

ultimately adopted.  Finally, unlike *Chapo*, it is not clear in this case that the ALJ did not

"triangulate from the two opinions."  *Chapo*, 682 F.3d at 1288.  Instead, the Court is left to guess

how the ALJ arrived at Ms. Pohl's mental RFC.

As Ms. Pohl points out in her reply, "the ALJ never mentioned adopting a middle ground

when rejecting Dr. Padilla's assessment . . . .  Nor did she compare Dr. Padilla's assessment to

those of the [state agency psychologists]."  Doc. 24 at 2.  The Court agrees with Ms. Pohl that if

the ALJ adopted a middle ground, it is unclear what evidence the ALJ relied on in coming to this

middle ground.  *Id*. at 3.  Ms. Pohl acknowledges that the RFC adopted by the ALJ "might

arguably" address her limitations in understanding and memory, social interactions, and

adaptation.  *Id*.  But as she points out, the ALJ's RFC in no way addresses the sustained

concentration and persistence limitations Dr. Padilla assessed.  *See id*.  Dr. Padilla found that Ms.

Pohl had marked limitations in the ability to "[m]aintain attention and concentration for extended

periods of time," to "[p]erform activities within a schedule, maintain regular attendance and be

punctual within customary tolerance," and to "[c]omplete a normal workday and workweek

without interruptions from psychological based symptoms and to perform at a consistent pace

without unreasonable number and length of rest periods."  AR 944.  These are abilities critical

for performing any job.  POMS DI 25020.010(B)(2)(a).  The ALJ's statement that Dr. Padilla's

"marked concentration and persistence limitations [are] not supported by his examination

findings during which the claimant missed one of five items while performing serial sevens and

which he rated as 'mildly impaired,'" AR 31, even if credited as true, certainly does not explain

how or why the ALJ found no limitations in Ms. Pohl's ability to "perform activities within a

schedule, maintain regular attendance and be punctual within customary tolerance," or to

"complete a normal workday and workweek without interruptions from psychological based

symptoms and to perform at a consistent pace without unreasonable number and length of rest periods." If, as the Commissioner argues, the ALJ credited parts of Dr. Padilla's opinion and rejected others, the ALJ must adequately explain which parts she credited and which she rejected, and why. Otherwise, as here, judicial review is impossible.

The Court is left to guess at how the ALJ arrived at the mental limitations in Ms. Pohl's RFC. This is contrary to SSR 96-8p's requirements of a narrative analysis and *Clifton's* requirement that the ALJ identify evidence supporting and contradicting the decision. The ALJ failed to "explain how [the] material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at*7. The mental RFC adopted by the ALJ conflicts with many of the limitations in Dr. Padilla's opinion, but the ALJ failed to explain "why [those parts of] the opinion [were] not adopted." *Id*. Because the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the Court cannot affirm the decision as legally correct. *Clifton*, 79 F.3d 1007. The Court therefore remands this case to allow the Commissioner to explain which parts of Dr. Padilla's opinion were adopted, and which were rejected, as well as the reasons for these determinations.

## VI.    Conclusion

Having determined that that the ALJ failed to properly weigh the opinion of examining psychologist Dr. Eligio R. Padilla, the Court remands to allow the Commissioner to provide a proper analysis. The Court does not reach Ms. Pohl's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Ms. Pohl's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 15) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent